IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEAN M.,[1]

        Plaintiff,

            v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.
_____

Case No. 3:19-cv-00876-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

Plaintiff Dean M. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title XVI Supplemental Security Income. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for the immediate payment of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

**BACKGROUND**

Born in 1961, plaintiff alleges disability beginning September 1, 2014, due to bipolar disorder, chronic obstructive pulmonary disease, hyperlipidemia, hypertension, and insomnia.[2] Tr. 221, 243. On June 8, 2018, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 37-62. On July 31, 2018, the ALJ issued a decision finding plaintiff not disabled. Tr. 15-31. After the Appeals Council denied his timely request for review, plaintiff filed a complaint in this Court. Tr. 1-5.

**THE ALJ'S FINDINGS**

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date. Tr. 17. At step two, the ALJ determined the following impairments were medically determinable and severe: "Depression, Bipolar Disorder, Cerebrovascular Accident, and Chronic Obstructive Pulmonary Disorder." Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 18.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff

---

[2] The record before the Court constitutes more than 1000 pages, with multiple incidences of duplication; where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears. Furthermore, the Court notes that plaintiff previously applied for, and was denied, Social Security disability benefits, with a final decision occurring in January 2014. Tr. 90-101, 239. Plaintiff then experienced escalating problems with alcohol that culminated with his incarceration between August 2014 and January 2015. See, e.g., Tr. 556-57. Accordingly, even though plaintiff alleges a 2014 disability onset, the adjudication period for his current claim runs from the application date (i.e., April 29, 2016) through the date of the ALJ's decision. Tr. 17; Price v. Massanari, 2001 WL 34047104, *5 (D. Or. Aug. 20, 2001).

Page 2 – OPINION AND ORDER

had the residual functional capacity ("RFC") to perform medium work as defined by 20 C.F.R § 416.967(c) except:

> [he] would be limited to frequent handling and fingering with [the] left non-dominant hand; [he] is limited to occasional exposure to fumes, odors, dust, and pulmonary irritants; and [he] is limited to work with a reasoning level of two[,] simple and routine tasks and simple work related decisions[,] and occasional contact with [the] public [and] interaction with coworkers.

Tr. 20.

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 29. At step five, the ALJ concluded, based on the VE's testimony, that plaintiff could perform a significant number of jobs in the national economy despite his impairments, such as industrial cleaner, laborer, and hand packager. Tr. 30. Accordingly, the ALJ concluded plaintiff was not disabled. Tr. 31.

**DISCUSSION**

Plaintiff argues that the ALJ erred by rejecting the medical opinion of examining Doctor Lindsay Heydenrych, Psy.D. Pl.'s Opening Br. 5-8 (doc. 18). At the time of the ALJ's decision, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, the opinions of treating doctors are accorded greater weight than those of examining doctors, and the opinions of examining doctors are entitled to greater weight than those of a non-examining doctors. Id. To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons, supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons, supported by substantial evidence. Id.

Plaintiff presented for a psychodiagnostic evaluation with Dr. Heydenrych on April 21, 2016, approximately one week before filing for disability benefits. Tr. 555. Dr. Heydenrych's assessment was based on behavioral observations, a clinical interview, the review of limited physical and psychological treatment records, and five objective metrics. Id. She diagnosed plaintiff with "Bipolar Disorder, Current [E]pisode Depressed, Moderate" and "Alcohol Use Disorder, In Sustained Remission." Tr. 558. Dr. Heydenrych also denoted plaintiff's occupational, social, and legal problems, including "difficulty obtaining and maintaining employment" and "[l]imited social and primary support." Id.

In the narrative portion of her report, Dr. Heydenrych described plaintiff's prognosis as follows:

> [Plaintiff] presents with severe functional interference from his major depression and manic episodes, and psychotic experiences that comprise his Bipolar Disorder. [He] has ongoing, severe difficulty organizing his behavior adequately to perform work tasks. His ability to perform adaptive, goal-directed activities, and even rote and repetitive tasks, is likely to be severely hindered by his persistent mood instability, and manic related delusions of grandeur . . .
>
> [Plaintiff] is currently prescribed medication for his mental health problem, and is engaged in mental health counseling as well. Although he has shown some improvement with treatment compliance, and sobriety from alcohol, he continues to experience significant interference to his functioning from his mental health symptoms. With continued, consistent, long-term appropriate psychotherapy along with a medication regime to manage his symptoms, [he] may see further improvement to his functioning. However, his symptoms of mood instability will probably not remit within the next 12 months, due to the severity and chronicity of his problems, despite treatment intervention.
>
> [Plaintiff's] mental health disorder, medication side effects, and poor stress tolerance pose severe interference to his concentration, motivation, memory, comprehension, and social interactions, so that he is not likely to function adequately in a job, beyond simple, low-demand work environments, and is likely to have significant difficulties functioning in a competitive work environment, and with completing a normal work-day or work-week.

Tr. 559.

In the subsequent "Functional Barriers" section of her report, Dr. Heydenrych reiterated that plaintiff's bipolar disorder, and corresponding depressive/manic episodes, would "significantly interfere with rational thought, attention, concentration and memory, interpersonal conduct, daily functioning, and communication," and would pose "significant difficulties functioning in a competitive work environment, and with completing a normal work-day or work-week with regular attendance." Id. She also opined that stress increases attendant to a work environment would create additional barriers to employment: "The unpredictability of what may trigger an episode for [plaintiff] raises serious concern about his ability to manage even minor stresses without exacerbating his symptoms, so that he would not be able to attend trainings or educations beyond a limited, part-time basis." Tr. 560.

The ALJ afforded "little weight" to Dr. Heydenrych's assessment because it "overstates [plaintiff's] limits and is inconsistent with the medical record." Tr. 27-28. Specifically, the ALJ cited to "[p]sychiatric examinations reveal[ing] [that plaintiff] often exhibited logical thought process; no delusions; coherent memory; purposefully focused attention; good mood; congruent affect; and appropriate judgment, insight, and cognition." Tr. 28. In addition, the ALJ found that plaintiff's daily activities were "inconsistent with Dr. Heydenrych's assessment," in that plaintiff was able to "care for his personal hygiene independently, prepare meals, and utilize public transportation," and he reported enjoyment from "working on his garden and electronics projects." Id.

As an initial matter, the solitary and minimal daily activities cited by the ALJ – i.e., performing basic personal hygiene, preparing simple meals, utilizing public transportation to access medical appointments, and occasionally engaging in certain pastimes within the comfort of one's own home – are neither inconsistent with Dr. Heydenrych's assessment nor indicative of the

mental ability to perform work-related activities on a regular and continuing basis. See White v. Astrue, 2012 WL 171001, *3 (D. Or. Jan. 20, 2012) (RFC is the most a claimant can do on a sustained basis – i.e., "8 hours a day, for 5 days a week, or an equivalent schedule" – and "complete incapacity [is not required to be found] disabled") (citations and internal quotations omitted).

Turning to the remaining rationale, an ALJ may discredit a medical opinion that is incongruent with the record as a whole. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, however, substantial evidence does not support the ALJ's conclusion that Dr. Heydenrych's opinion was inconsistent with the medical record. In fact, both Dr. Heydenrych's report and the subsequent treating medical evidence reflects that plaintiff is significantly functionally limited by his mental impairments.

Notably, plaintiff had two primary treating mental health providers during the relevant time period: Jackson Wilshire, Q.M.H.P., and Nathaniel Holt, N.P. Mr. Wilshire began treating plaintiff in December 2015 and saw him approximately every month through the date of the ALJ's decision; these chart notes document plaintiff's continual cycles of depression, anxiety, sleep disturbance, and hypomania, despite plaintiff's medication compliance. Tr. 485-92, 686-712, 775-80, 948-1015.

Further, in May 2018, Mr. Wilshire completed a "Mental Residual Functional Capacity Assessment," in which he endorsed:

> ● moderate impairments in plaintiff's ability to remember locations and work-like procedures, respond to demands and adapt to changes, understand and respond to social queues, keep social interactions free of excessive irritability or other inappropriate behavior, and understand, remember, and carry out short and simple repetitive instructions or tasks;
>
> ● marked impairments in plaintiff's ability to use reason and judgment to make work-related decisions, interact appropriately with the general public or customers, ask simple questions or request assistance from supervisors or coworkers, respond to requests/suggestions/criticism/corrections and/or challenges from supervisors,

> work cooperatively and handle conflicts with coworkers, work at an appropriate and consistent pace and complete tasks in a timely manner, manage psychologically based symptoms, set realistic goals and make plans for oneself independently of others, and understand, remember, and carry out detailed instructions which may or may not be repetitive; and
>
> • extreme impairments in plaintiff's ability to sustain an ordinary routine and regular attendance at work, work a full day and complete a full week without needing more than the allotted number or length or rest periods during the day, ignore or avoid distractions while working, and work close to or with others without interrupting or distracting them.

Tr. 1018-20. Mr. Wilshire accompanied each section of his report with a description of the symptoms that would cause the delineated restrictions. Id. He also opined plaintiff's attention and concentrations would be impaired 25-30% of the workweek, even for simple tasks, and that plaintiff would miss more than two days of work per month due to his impairments. Tr. 1019-20.

Although Mr. Holt did not submit a form describing the nature and severity of plaintiff's mental limitations, he did provide counseling to plaintiff during the adjudication period and prescribe plaintiff a combination of psychotropic medications. Tr. 599-616, 739-43, 795-904. As with Mr. Wilshire, Mr. Holt's chart notes routinely demarcate plaintiff's significant mental disruption, including poor sleep, racing thoughts, hypomania, depression, anxiety, bizarre behaviors, and irrational beliefs, despite some waxing and waning of symptoms.[3] Id.; see also Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014) ("[c]ycles of improvement and debilitating

---

[3] As plaintiff's longstanding mental health treating specialists, both Mr. Wilshire and Mr. Holt have the most complete longitudinal picture of plaintiff's impairments. Thus, although neither qualifies as an acceptable medical source due to the timing of plaintiff's application, the overwhelming consistency between their chart notes and Dr. Heydenrych's opinion is telling. Moreover, the ALJ did not fully credit a single mental medical or lay source. This is significant because all of the opinion evidence indicates restrictions beyond those outlined in the RFC; even the state agency consulting sources, who reviewed the record in July and November 2016, included additional social and concentration/persistence limitations that the ALJ rejected. Compare Tr. 28-29, with Tr. 123-25, 138-40; see also Makiah K. J. v. Comm'r of Soc. Sec. Admin., 2020 WL 569355, *2 (D. Or. Feb. 5, 2020) (ALJ's rejection of every favorable treating, examining, and consulting source may suggest a lack of meaningful consideration of the record).

Page 7 – OPINION AND ORDER

symptoms are a common occurrence [with mental health impairments], and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and treat them as a basis for concluding a claimant is capable of working").

In sum, there is no evidence in the record from an examining or treating source to contradict Dr. Heydenrych's opinion. The record is replete with evidence demonstrating the seriousness of plaintiff's mental impairments; although he engaged in regular treatment for several years and was compliant with his medication regime, he consistently experienced psychological symptoms at a level which significantly interfered with his daily functioning. As such, the ALJ impermissibly mischaracterized the medical record in affording less weight to Dr. Heydenrych's assessment. See Ghanim v. Colvin, 763 F.3d 1154, 1161-62 (9th Cir. 2014) (reversing the ALJ's evaluation of medical opinion evidence under analogous circumstances); see also Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and therefore did not constitute substantial evidence).

Because the ALJ committed harmful legal error in evaluating the acceptable medical opinion evidence regarding plaintiff's mental impairments, remand is warranted. See Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (only mistakes that are "non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

**II.    Remedy**

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the court's discretion. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the

Commissioner's decision. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The court nevertheless may not award benefits punitively. Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

In this case, the ALJ erred by failing to provide legally sufficient reasons, supported by substantial evidence, for discrediting Dr. Heydenrych's opinion. Indeed, as discussed above, the record consistently demonstrates that plaintiff experiences debilitating disruption to his work-related functioning as a result of his mental impairments. In addition, the Commissioner has not pointed to, and an independent review of the record does not reveal, any evidence that casts into serious doubt the debilitating extent of plaintiff's impairments. See generally Def.'s Resp. Br. (doc. 19). Lastly, there is no indication that plaintiff's conditions have or will significantly improve. Rather, the treating medical evidence that post-dates Dr. Heydenrych's assessment only reaffirms the longstanding and persistent nature of plaintiff's limitations.

Thus, the record has been fully developed and there are no outstanding issues left to be resolved. Plaintiff was 55 years old as of the application date and is now 59 years old, thereby placing him within the "advanced age" category. Plaintiff has physical impairments in addition to his mental impairments, 20 C.F.R. § 416.963(e), and has no past relevant work or transferrable skills. Tr. 30. Moreover, the VE testified that any of the following circumstances would preclude the maintenance of competitive employment: being one hour late to work once per week, missing 16 hours of work per month, or having an impaired ability to concentrate 20% percent of the time. Tr. 60-61. Therefore, the Court, in its discretion, credits the improperly rejected evidence as true and finds plaintiff disabled.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for the immediate payment of benefits.

IT IS SO ORDERED.

DATED this 6th day of April, 2020.

                                       /s/ Jolie A. Russo
                                       Jolie A. Russo
                                  United States Magistrate Judge